**IT IS SO ORDERED.**

**SIGNED THIS: November 16, 2018**

_____
**Mary P. Gorman
United States Chief Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| **IN RE** | ) | **Chapter 11** |
| | ) | |
| **BARTLETT MANAGEMENT SERVICES, INC.,** *et al.*,[*] | ) ) | **Case No. 17-71890** |
| | ) | **(Jointly Administered)** |
| **Debtors.** | ) | |

**ORDER GRANTING PROCEDURAL ISSUES WITH RESPECT TO
THE PROPOSED SALE OF SOME OR SUBSTANTIALLY ALL OF
THE DEBTORS' ASSETS**

This cause coming to be heard on October 30, 2018, and November 15, 2018 (collectively, the "Hearing"), on Debtors' Emergency Motion for Entry of an Order (I) (A) Authorizing the Debtors to Sell Substantially All of Their Assets Free and Clear of All Interests, Including Liens, Claims, and Encumbrances, at a Public Auction with Any Liens to Attach to the Sale Proceeds, (B) Establishing Bidding Procedures in Connection with the Proposed Sale,

_____

[*] The Debtors in these chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Bartlett Management Services, Inc. (4428); Bartlett Management Indianapolis, Inc. (2750); and Bartlett Management Peoria, Inc. (1543). The mailing address of all of the Debtors is 70 Clinton Plaza, Clinton, Illinois, 61727-2170.

<u>(C) Approving the Form and Manner of Notice of the Transaction, (II) Shortening Notice of this Motion and the Transaction to the Extent Necessary to Comply with the Dates and Deadlines Requested by this Motion, (III) Setting a Hearing Date to Consider Final Approval of the Contemplated Transactions; and (IV) Limiting Notice of this Motion (But Not the Transaction)</u> [Doc 408] (the "Motion"), pursuant to which the Debtors have sought various relief, including (among other things) the establishment of bidding procedures, procedures relating to the assumption and assignment of various leases and contracts, and ultimately the approval of a possible sale or other transaction to maintain the Debtors' businesses as going concerns; the Court having entered an Order on October 25, 2018, scheduling the Hearing, approving shortened and limited notice of the same and directing the Debtors to serve notice of the Hearing on various parties not included on the CM/ECF recipient list (the "October 25 Order") [Doc 409]; the Debtors having served notice of the Hearing in accordance with the requirements of the Order [Doc 410]; KFC Corporation having filed, on October 29, 2018, a limited objection to the motion [Doc 413] (the "KFC Objection"); Kmart Stores of Illinois LLC ("Kmart") also having filed, on October 30, 2018, a limited objection to the Motion (the "Kmart Objection") [Doc 415]; the Debtors having agreed that the Kmart Objection prevented the Debtors from selling the Kmart Ground Lease (as defined in the Kmart Objection); Ally Bank and Ally Financial having filed, on November 8, 2018, a limited objection to the Motion [Doc 442] (the "Ally Objection"); the Debtors having thereafter filed, also on November 8, 2018 [Doc 443], a response to the Ally Objection (the Ally Response") in which the Debtors agreed that the Ally Objection was meritorious and that the Debtors would not sell any vehicle in which Ally (or any other party) possesses a lien or security interest (a "Secured Vehicle Lender"); the Debtors and KFC having resolved the KFC Objection; capitalized terms utilized but not otherwise defined in this Order

having the meanings ascribed to them in the Motion; and the Court being fully advised in the premises;

IT IS HEREBY FOUND, ORDERED AND DECREED as follows:

1. The Motion is granted, inclusive of the procedural issues set forth in Exhibit A hereto (the "Procedural Issues").

2. The Procedural Issues set forth in Exhibit A are comprised of (a) the Bid Procedures, (b) the Sale Approval Procedures, and (c) the Contract Assignment Procedures.

3. The Debtors will not sell the Kmart Ground Lease.

4. The Debtors will not sell any of its motor vehicles that is subject to a security interest or lien of a Secured Vehicle Lender unless (a) the Debtors and the Secured Lender agree to such sale, (b) the Court enters an Order (an "Agreed Vehicle Sale Order") expressly approving such sale, and (c) such Agreed Vehicle Sale Order provides for the treatment of the proceeds of such sale in a manner acceptable to the Secured Vehicle Lender.

5. As set forth in Exhibit A hereto, the Sale Approval Hearing shall be held before the United States Bankruptcy Court for the Central District of Illinois, Springfield Division, at United States Courthouse, Room 232, 600 E Monroe St., Springfield, IL 62701, on Thursday, January 3, 2019, at 10:00 a.m.

Agreed as to Substance and Form:

By: /s/ Jonathan Backman By: /s/ Erika Barnes
 Counsel for the Debtors Counsel for KFC

###

## Exhibit A

## Bid Procedures

A. **Summary and Definition of Key Proposed Dates (all times are Central Standard Time):**

1. "Bid Deadline": Monday, November 26, 2018, at 4:30 p.m.; provided, however, that any party may submit a Bid[1] until the 24th day following the date of entry of the attached Order, and the Debtors may accept such Bid as a Qualified Bid if KFC, in the exercise of its discretion, approves the Bidder as a potential KFC franchisee, and accepts the Bid as satisfying KFC's standards for the acquisition of a franchise.[2]

2. "Qualified Bid Announcement Date": Wednesday, December 19, 2018, at 2:00 p.m.

3. "Baseline Bid Announcement": At Commencement of Auction

4. Auction Date and Location: Thursday, December 20, 2018, at 11:00 a.m. (the "Auction"):

    President Abraham Lincoln Doubletree Hotel
    701 E. Adams Street
    Springfield, Illinois  62701
    217-544-8800

5. "Successful Bid Announcement Date": Thursday, December 27, 2018.

6. Sale Approval Hearing: January 3, 2019, at 10:00 a.m.

7. Closing Deadline: (As provided in the Successful Bid).

---

[1] Capitalized terms used but not otherwise defined in this Exhibit shall have the meaning ascribed to them in (i) the attached Order, or (ii) unless otherwise defined in the Order, in the Sale Procedures Motion; provided, however, that capitalized terms utilized in this Exhibit and then defined later herein shall have the meanings ascribed to them herein.

[2] A party submitting a Bid after the presumptive Bid Deadline of November 26, 2018 (the "Presumptive Bid Deadline"), should include with its Bid, in addition to the other materials required for a Bid to qualify as a Qualified Bid (as set forth below), an explanation as to why it failed to submit its Bid by the Presumptive Bid Deadline so that the Debtors and KFC (and, potentially, the Court) are able to determine the reasonableness of its failure to submit a Bid by the Presumptive Bid Deadline.

B.  **Designation as Qualified Bidder:**

    1.    A "Qualified Bidder" is any person or entity (a "Potential Bidder") that not later than the Bid Deadline, pays the Good Faith Deposit (as defined below), and (ii) delivers the documents described immediately below, and that the Debtors (in their discretion, and with assistance from their advisors) determines is reasonably likely to consummate a Sale if selected as a Successful Bidder (defined below):

        a.    Corporate Authority.  No later than the Bid Deadline, written evidence, reasonably acceptable to the Debtors, of the Potential Bidder's management's approval of the contemplated transaction; provided, however, that, if the Potential Bidder is an entity specially formed for the purpose of effectuating the contemplated transaction, then the Potential Bidder must furnish written evidence reasonably acceptable to the Debtors of the approval of the contemplated transaction by the equity holder(s) of such Potential Bidder.

        b.    Proof of Financial Ability to Perform.  No later than the Bid Deadline, written evidence that the Debtors reasonably conclude demonstrates that the Potential Bidder has the necessary financial ability to close the contemplated transaction.  Such information should include, inter alia, the following:

            i.    Contact names and numbers for verification of financing sources;

            ii.    Evidence of the Potential Bidder's internal resources and proof of any debt or equity funding commitments that are needed to close the contemplated transaction; and

            iii.    Any such other form of financial disclosure, credit-quality support information or enhancement reasonably acceptable to the Debtors demonstrating that such Potential Bidder has the ability to close the contemplated transaction; provided, however, that the Debtors shall determine, their reasonable discretion, in consultation with the Debtors' advisors, whether the written evidence of such financial wherewithal is reasonably acceptable, and shall not unreasonably withhold acceptance of a Potential Bidder's financial qualifications; provided,

    however, that an otherwise potentially Qualified Bid will be disqualified (a "Disqualified Bid") in the event that, in the Debtors' reasonable judgment, the proponent of the Qualified Bid (the "Disqualified Bidder") has (a) violated the Debtor Confidentiality Agreement or the KFC Confidentiality Agreement, (b) engaged in collusion in connection with the Auction, or (c) has proffered an otherwise Qualified Bid that contains materially false representations or warranties.[3]

  c. <u>Written Proposal.</u> In order to ensure that an otherwise Qualified Bid will be recognized as allowing the bidder to participate in the Auction, the Potential Bidder, no later than the Bid Deadline, should deliver a signed written proposal for the purchase of the Included Assets (as defined in the FAPA), or a portion of the Included Assets, in a form substantially in conformance with the FAPA,[4] with such modifications (including specific dollar amounts, Included Assets and Excluded Assets (as defined in the FAPA) and subject to such reasonable modifications as the Debtors or the Successful Bidder may request and the other parties to such agreement agree) as the bidder intends for its opening bid at the Auction.

2. Upon receipt from a Potential Bidder of a written proposal containing the required information, the Debtors, as soon as is practicable (and no later than 11:59 p.m. on the Qualified Bid Announcement Date) shall

---

  [3] In the event that the Debtors designate a Bid as a Disqualified Bid, then the Debtors, within 24 hours of such designation, shall notify the Disqualified Bidder that its Bid has been so designated, and will provide the Disqualified Bidder and KFC with the reasons for such designation.

  [4] The FAPA is located in the VDR and is available to any person who has executed a Confidentiality Agreement ("CA"), unless such person has violated the CA and has therefore been disqualified from bidding or whose Bid has become a Disqualified Bid.  The terms of the FAPA may change at the request of the Debtors' franchisor or for any other reason that the Debtors deem necessary and appropriate to ensure their ability to close the Sale.  A Bid that is predicated on an earlier version of a FAPA will not be disqualified for failing to include provisions of an updated FAPA, but the Debtors may require a Potential Bidder to supplement its Bid to include or address any provisions added to an updated FAPA.  For the sake of clarity, a Bid may include provisions not contained in the FAPA so long as its Bid addresses all items included in the FAPA (as of the date that the Potential Bidder submitted its Bid).

    determine and notify the Potential Bidder as to whether such Potential Bidder is a Qualified Bidder and whether its Bid is a Qualified Bid or a Disqualified Bid.  In the event that the Debtors determine that a Bid is not a Qualified Bid, then the Potential Bidder who tendered such Bid may supplement its Bid, within 24 hours of the Debtors' notification that its Bid is not a Qualified Bid.

### C. Bidding Process

1. The Debtors and their advisors shall: (i) determine whether a Potential Bidder is a Qualified Bidder; (ii) receive offers from Qualified Bidders; and (iii) negotiate any offers made; provided, however, that a Potential Bidder shall not be a Qualified Bidder unless KFC notifies the Debtors at or before Noon on the Qualified Bid Announcement Date that the Potential Bidder and its Bid are acceptable to KFC.

2. KFC shall advise the Debtors as to whether a Potential Bidder and its Bid are acceptable to KFC by no later than Noon on the Qualified Bid Announcement Date.

3. The Debtors, in consultation with the Committees, HBT and KFC will have the right to adopt such other rules for the Bid Procedures (including rules that may depart from those set forth herein) that will better promote the goals of the Bid Procedures and that are not inconsistent with any Order of the Court.

### D. Bid Deadline

1. As indicated above, the deadline for submitting Bids by a Qualified Bidder (the "Bid Deadline") shall be Monday, November 26, 2018, at 4:30 p.m., subject to the Debtors' right to accept late bids through the 24th day following the entry of the attached Order under the conditions set forth on page 1 of this Exhibit under Bid Procedures, § A.1.

2. On or before the Bid Deadline, a Qualified Bidder that desires to make an offer, solicitation or proposal (a "Bid") shall deliver by electronic mail (sometimes, "email") a copy of its bid to (a) the Debtors' broker, Equity Partners HG LLC, c/o Hank Waida, 16 N. Washington St., Suite 102, Easton, MD 21601; Email:  Hwaida@equitypartnershg.com (b) the Debtors' counsel, Jonathan Backman, Law Office of Jonathan A. Backman, 117 N. Center Street Bloomington, Illinois 61701, (309) 820-7420; Email: jbackman@backlawoffice.com, and (c) the Committees' counsel, Matthew E. McClintock, Goldstein & McClintock LLLP, 111 W. Washington Street, Ste. 1221, Chicago, IL 60602, Email:

mattm@goldmclaw.com; (d) the U.S. Trustee, Mark D. Skaggs, 401 Main Street, #1100, Peoria, IL 61602, Email: mark.d.skaggs@usdoj.gov; and (e) counsel for Heartland Bank and Trust Company, Mark A Bogdanowicz, One Technology Plaza; 211 Fulton St #600, Peoria, IL 61602, Email: mbogdanowicz@howardandhoward.com.

3. Promptly upon receiving a Bid from a Potential Bidder, the Debtors shall transmit the Bid (including any Disqualified Bid) to KFC.

4. As indicated above, the Debtors shall have the right, in their sole discretion, to qualify bids that are submitted after the Bid Deadline, provided that KFC approves the Bid (and the Potential Bidder that tendered such Bid), subject to the conditions set forth on page 1 of this Exhibit under Bid Procedures, § A.1.

E. **Bid Requirements:**

1. To be eligible to participate in the Auction, each Bid and each Qualified Bidder submitting such a Bid must be determined by the Debtors to satisfy each of the following conditions:

    a. Good Faith Deposit. Each Bid must be accompanied by a deposit (the "Good Faith Deposit") in the form of a wire transfer or cashier's check payable to "Equity Partners HG LLC" in an amount equal to 10% of the Bid.

    b. Cash-Only Bids. The consideration proposed by the Bid shall include only cash, except that a Credit Bid (as defined and described below) shall be deemed equivalent to cash consideration so long as the Debtors, in their sole discretion, determine that the Credit Bidder (as also defined below) possesses a bona fide basis for asserting a perfected lien on the property for which the Credit Bidder is making its Credit Bid.

    c. KFC Approval. KFC has approved the Potential Bidder and the Bid.

2. Irrevocable. A Bid must be irrevocable until two (2) business days after the Included Assets in the Bid or Bids (collectively, the "Acquired Assets") have been sold pursuant to the Closing of the Sale or Sales approved by the Bankruptcy Court.

5

    3.    Contingencies:

        a.    A Bid may not be conditioned on obtaining financing or any internal approval, or on the outcome or review of due diligence.

        b.    Financing Sources: A Bid must contain written evidence of a commitment for financing or other evidence of the ability to consummate the Sale satisfactory to the Debtors, with appropriate contact information for such financing sources.

        c.    Adequate Assurance. Any Bid submitted in accordance with the Bid Procedures must identify such Contracts and/or Leases to be assumed and assigned and provide the nature of, and evidence of its ability to provide, adequate assurance of future performance of such Contracts or Leases along with the Qualified Bid (the "Adequate Assurance Package").[5]

        d.    In the event that any Potential Bidder is determined by the Debtors not to be a Qualified Bidder, or KFC rejects a Potential Bidder or a Bid, the Potential Bidder shall be refunded its Good Faith Deposit within three (3) business days after that determination.

**F.    Credit Bidding:**

    1.    Each creditor that possesses, or purports to possess, a security interest or lien on any of the Included Assets (a "Secured Creditor") will be entitled to credit bid (any such Secured Creditor, a "Credit Bidder") on the Included Assets as to which it purports to hold a valid and protected lien (the "Secured Assets"), for an amount up to the value of its perfected security interest in the Secured Assets (a "Credit Bid"); provided, however, that a Secured Creditor must present a formal bid at or before the Auction in order to preserve its right to tender a Credit Bid at the Auction.

---

[5]    An Adequate Assurance Package should include, to the extent possible, the following information regarding the Bidder: (a) audited financial statements; (b) cash flow projections for the Bidder and for the Contract or Lease to be assigned; (c) any financial projections, proformas, or similar financial information prepared in contemplation of purchasing the Contract or Lease; and (d) reasonable information about the Bidder's experience in the fast food industry.

2. In the event that a Credit Bidder is the Successful Bidder (a "Prevailing Credit Bidder"), the Secured Assets shall be deemed a portion of the proceeds of the Sale. In such event, the Secured Assets purchased via a Credit Bid shall remain property of the Debtors' estates pending a determination as to the validity, extent and/or priority of the Prevailing Credit Bidder's lien or liens on the Secured Assets, unless such determination already has been made by a final Order.

3. If, at the end of such process, the Prevailing Credit Bidder is determined not to have possessed the senior lien on any of the Secured Assets for which it credit bid, then (a) if another Secured Creditor possessed a perfected lien on such Secured Assets senior to that of the Prevailing Credit Bidder, then the applicable Debtor shall transfer the Secured Assets on which such Prevailing Credit Bidder did not possess a first priority lien to such Prevailing Bidder subject to the senior lien of such other Secured Creditor, and (b) if no other lien existed on the portion of the Secured Assets as to which Prevailing Credit Bidder did not possess a senior lien (i.e., the Prevailing Credit Bidder did not possess a perfected lien on such assets), then the Prevailing Credit Bidder shall pay the Debtor the reasonable fair market value of such portion of the Secured Assets.

4. Anything in the foregoing paragraphs to the contrary notwithstanding, a Secured Creditor may not purchase the KFC Franchise Agreements or any KFC trademarked or proprietary property without KFC's express written consent.

G. **Qualified Bid Announcement**

1. As soon as possible after the receipt of Bid, and no later than 2:00 p.m. on the Qualified Bid Announcement Date, the Debtors shall notify each person who has tendered a Bid whether (a) its Bid is a Qualified Bid and that it may participate in the Auction, or (b) its Bid is not a Qualified Bid.

H. **Auction**

1. The Debtors shall conduct the Auction to determine the highest and best bid with respect to the Included Assets in each Bid. The Auction shall commence on Thursday. December 20, 2018, at 11:00 A.M. at a conference room at President Abraham Lincoln Doubletree Hotel, 701 E. Adams Street, Springfield, Illinois.

7

2. No later than the commencement of the Auction, the Debtors will notify all then-Qualified Bidders of the highest, best and otherwise financially superior Qualified Bid as determined by the Debtor (the "Baseline Bid").

3. The Auction shall be conducted according to the following procedures:

   a. Only Qualified Bidders that have submitted a Qualified Bid (or submit such a bid during the course of the Auction that the Debtors, in their discretion choose to qualify) will be eligible to participate in the Auction.[6]

   b. Only the authorized person as identified in the Qualified Bid of each of the Qualified Bidders, the Secured Creditors and the Debtors shall be permitted to participate in the Auction.

   c. Each Qualified Bidder will be required to confirm in writing that it has not engaged in any collusion with any party, including but not limited to other prospective or actual bidders, with respect to the Auction or the Proposed Sale.

   d. During the Auction, bidding shall begin initially with the Baseline Bid, continue in minimum increments of at least $100,000.00.

   e. Except as otherwise set forth herein, the Debtors may conduct the Auction in the manner they determine will result in the highest, best or otherwise financially superior offer for the Acquired Assets.

   f. The Debtors and their professionals shall direct and preside over the Auction.

   g. A party holding, or purporting to hold, a secured claim may credit bid for the assets as to which it possesses, or purports to possess, a valid and perfected lien, provided that its bid does not constitute a Disqualified Bid, in which event it would be disqualified from bidding at the Auction like any other Bidder holding a Disqualified Bid.

---

[6] Because the Auction is a public auction, anyone may attend the Auction. Landlords, in particular, are encouraged to attend the Auction and may participate to the extent that their leases become the subject of Qualified Bids.

8

    h.    All material terms of each Bid tendered at the Auction shall be fully disclosed to all other Qualified Bidders.

    i.    Unless otherwise directed or ordered by the Bankruptcy Court, bidding at the Auction will be transcribed, but consultations among the Debtors, the Committees, HBT and/or KFC shall not be transcribed and, in such instance, shall constitute settlement discussions within the purview of Federal Rule of Evidence 408.

## I. Consent to Jurisdiction as Condition to Bidding

1. All Potential Bidders who submit Qualified Bids shall be deemed to have consented to the jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Sale, the Auction and the construction and enforcement of all transaction documents.

## J. Closing of Auction and Consummation of Sale

1. Upon conclusion of the bidding, the Auction shall be closed.

2. The Debtors shall (a) promptly review each Qualified Bid on the basis of financial and contractual terms and the factors relevant to the Sale process, including those factors affecting the speed and certainty of consummating the proposed Sale, and in consultation with the Committees and HBT (b) identify (I) the highest, best or otherwise financially superior offer(s) for the Acquired Assets or a portion thereof (the "Successful Bid(s)") and the entity or entities submitting such Successful Bid(s) (in the case of more than one, each a "Successful Bidder"), which highest, best or otherwise financially superior offer(s) will provide the greatest amount of net value to the Debtors, and (II) the next highest or otherwise best offer after the Successful Bid(s) (in the case of more than one, each a "Backup Bid").

3. The Debtors shall advise all Qualified Bidders, the Committees, HBT and KFC of the Successful Bidder(s) and the Backup Bidders by the Successful Bid Announcement Date.

4. The Debtors shall thereafter seek approval of a sale (or sales) to the Successful Bidder(s) in accordance with the Sale Approval Procedures and the Contract Assignment Procedures set forth below.

9

5. Prior to, or as soon as possible after, the Sale Approval Hearing, the Successful Bidder(s) shall complete and execute all agreements, contracts, instruments or other documents evidencing and containing the terms and conditions upon which the Successful Bid was made.

6. The Debtors' identification of a Successful Bid and a Backup Bid shall constitute the acceptance of such Bid only upon Court's entry of an Order approving the Sale (the "Acceptance"), provided that (a) no objection to the Sale or the Auction has been filed, and (b) no stay of the Sale has been granted by any court of competent jurisdiction.

7. Upon the Debtors' Acceptance of a Successful Bid or Backup Bid, the Closing shall occur by the Closing Deadline, or on such other date, as soon as reasonably practicable thereafter, as may be mutually agreed by the Successful Bidder (or, if the Successful Bid is prevented from closing at the conclusion of the Sale Approval Hearing as a result of the Contract Assignment Procedures set forth below, the Backup Bidder).

K. **Good Faith Deposits and Backup Bidder.**

1. The Good Faith Deposits of all Qualified Bidders shall be held by Equity Partners in a non-interest bearing account. The Good Faith Deposit of the Successful Bidder shall be applied to the purchase price of such transaction at Closing.

2. Good Faith Deposits of all other Qualified Bidders will be returned promptly to all Bidders who have posted such a deposit, (other than the Successful Bidder and the Backup Bidder) following the conclusion of the announcement of the Successful Bidder and the Backup Bidder.

3. Unless the Backup Bidder has withdrawn its Bid in accordance with these procedures, the deposit of the Backup Bidder shall be held until the seventh (7th) day after the Sale is consummated, at which time the Good Faith Deposit will be returned to the non-purchasing bidder, unless forfeited as set forth below.

4. If the Successful Bidder fails to consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, then the Debtors shall be entitled to retain the Good Faith Deposit (subject to the rights of the Broker to a portion of such forfeited deposit), and the Debtors' estate shall possess a claim against such Successful Bidder for damages in excess of the Good Faith Deposit as part of its damages resulting from such breach or failure to perform.

    5.    The Backup Bidder shall keep the Backup Bid open and irrevocable until 5:00 p.m. on the seventh (7th) day following the Closing Deadline with the Successful Bidder.

    6.    If the Successful Bidder fails to timely consummate an approved Sale because of a breach or failure to perform on the part of such Successful Bidder, the Backup Bid will be deemed to be the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Backup Bidder without further order of the Court by such date as is mutually agreed among the parties. In such case, as set forth above, the Successful Bidder's deposit shall be forfeited to the Debtors as damages, and the Debtors shall retain all rights to seek all available damages from the defaulting Successful Bidder.

## L.   Limited Standing

    1.    A Bidder shall have standing only to assert that the Debtors have abused their discretion in failing to accept its Bid as Qualified Bid.

    2.    In submitting a Bid, a Bidder waives any right to assert that the Debtors have provided misinformation in or omitted material information from the VDR or otherwise in providing information to the Bidder.

## M.   Limited Damages Exculpation

    1.    If the Debtors fail to consummate a Sale, or otherwise breaches the provisions of Bid Procedures Order or the Sale Approval Order, including those pertaining to the Auction and Sale contemplated hereby, then except in the case of intentional misconduct by the Debtors, or their officers, agents, or professionals (the "Debtor Parties"), no party (including without limitation any Bidder) shall possess a claim against the Debtor Parties, or any of them, for damages; and any party pursuing any action (whether or not resulting in a lawsuit) against any of the Debtor Parties shall be liable to the Debtor Parties for any costs, expenses or fees (including reasonable attorney and other professional fees) that the Debtor Parties, or any of them, may incur in defending against any such action.

11

N.  **Electronic Mail as Primary Means of Service**

    1.  Except where expressly provided otherwise herein, all parties or parties-in-interest who participate, or seek to participate, in the Auction:

        a.  shall be deemed to agree to receive and send required Bids, notices and other correspondence by electronic mail,

        b.  shall provide to the Debtors' counsel and the Broker, by electronic mail, at the email addresses set forth herein the parties' electronic mailing address and a phone number that the Debtors may contact to confirm receipt of an email, and

        c.  shall send any Bid, notice or other correspondence directed to the Debtors or their advisors by electronic mail to both Jonathan Backman and Hank Waida, and shall confirm that both persons received such email by calling the telephone numbers set forth herein for each of the two and either telling them directly, or leaving a message, (I) that an email has been sent to them, (II) the sender of the email, and (III) the approximate date and time of the email, along with (IV) a telephone number that Messrs. Backman or Waida, or both, may contact in the event that they do not receive the email.

## The Sale Approval Procedures

A.  **Sale Notice:**

    1.  On the Successful Bid Announcement Date, the Debtors will serve notice of the Sale Approval Hearing (the "Sale Notice"), including a proposed form of the Sale Approval Order, by first class mail on: (a) the Office of the United States Trustee for the Central District of Illinois (the "U.S. Trustee"); (b) the attorneys for HBT; (c) the attorneys for the Creditors Committees; (d) all known creditors of the Debtors; (e) the attorneys for KFC; (f) all parties known to the Debtor to have expressed an interest in acquiring the Debtors' assets; (g) all attorney general's offices in the states in which the Debtors do business; (h) all county attorneys' offices in the counties in which the Debtors do business; (i) all affected federal and local regulatory and taxing authorities, including the Internal Revenue Service, and (j) all Contract Counterparties (as hereinafter defined) (collectively, the "Sale Notice Parties").

B.      Date, Time, and Place of the Sale Approval Hearing:

1.      The Sale Approval Hearing shall be held before the United States Bankruptcy Court for the Central District of Illinois, Springfield Division, at United States Courthouse, Room 232, 600 E Monroe St., Springfield, IL 62701, on Thursday, January 3, 2019, at 10:00 a.m.

C.      Objection Deadline to Sale Approval Order:

1.      Objections to the relief sought to be granted by the Sale Approval Order shall be in writing, filed, and served so as to be actually received by: (a) counsel to the Debtors, Jonathan A. Backman, Esq., Law Office of Jonathan A. Backman 117,N. Center Street, Bloomington, Illinois 61701, Email: jbackman@backlawoffice.com; (b) counsel to the Official Committees of Unsecured Creditors, Matthew E. McClintock, Esq., Goldstein & McClintock LLLP, 111 W. Washington Street, Ste. 1221, Chicago, IL 60602, Email: mattm@goldmclaw.com; and (c) the U.S. Trustee, Mark D. Skaggs,  401 Main Street, #1100, Peoria, IL 61602, Email: mark.d.skaggs@usdoj.gov; and (d) counsel for Heartland Bank and Trust Company, Mark A Bogdanowicz, One Technology Plaza; 211 Fulton St #600, Peoria, IL 61602, Email: mbogdanowicz@howardandhoward.com (collectively, the "Objection Notice Parties"), at least 48 hours prior to the Sale Approval Hearing.

D.      Information Provided to Interested Parties:

1.      The Debtors either have provided or will provide to all parties that have either expressed an interest in purchasing the Debtors' assets or who the Debtors believe may have an interest in purchasing their assets and that have executed a Confidentiality Agreement with the Debtors and/or Equity Partners (each an "Interested Party" and, collectively, the "Interested Parties"), certain information in connection with the proposed Sale, including, among other things, this Order

## The Contact Assignment Procedures

A.      Notice of Contract Assignment Procedures:

1.      Upon receipt of an Adequate Assurance Package from a Potential Bidder that submits a Bid that the Debtors reasonably believe will be a Qualified Bid, the Debtors will serve such Adequate Assurance Package on the non-Debtor party to any Contract or Lease (a "Contract

13

Counterparty") that the Potential Bidder has identified as one that such bidder would intend to acquire if it is the Successful Bidder.

2. On the Qualified Bid Announcement Date, or within a day following such date, the Debtors will file an assignment schedule (the "Assignment Schedule") with the Court and serve such Assignment Schedule on each Contract Counterparty.

3. The Assignment Schedule will include (a) the title of the Contract or Lease to be assumed, (b) the name of the Contract Counterparty, and (c) the proposed terms of any assumption and assignment, including (i) any modifications to the current terms of the Contract or Leases,[7] and (ii) any cure amounts that the Debtors will have to pay to effect the assumption and assignment (collectively, the "Preliminary Assignment Information").[8]

4. Within 24 hours of the Successful Bid Announcement Date the Debtors shall file and serve on the Contract Counterparties whose contracts or leases have been identified for assignment and assumption by the Successful Bidder or Backup Bidder, the identity of such bidders and the terms of their Bids (the "Assignee Information," and collectively with the Preliminary Assignment Information, the "Final Assignment Information").

---

[7] For the sake of clarity, no Contract or Lease may be assumed or assigned in modified form without the express consent of the Contract Counterparty and the applicable Debtor-party to such Lease or Contract.

[8] The cure amount due to a Contract Counterparty whose Lease or Contract is assumed shall be paid (i) if the cure amount set forth in the Preliminary Assignment Information is undisputed, then no later than the Closing Deadline, or (ii) if such cure amount is disputed, the undisputed portion of the cure amount shall be paid by the Debtors no later than the Closing Deadline, with the disputed portion of such cure amount paid by the Debtors within 7 calendar days of the effective date of a final, non-appeal order resolving the cure amount due to the Contract Counterparty (subject to the escrow requirements of Paragraph C.2. below).

B. **Objection to Assumption and/or Assignment of Contracts and Leases**:

1. At least 48 hours prior to the Sale Approval Hearing (the "Assignment Objection Deadline"), any Contract Counterparty who objects to the assumption and assignment of its Contract of Lease pursuant to the Final Assignment Information must file an objection with the Court (an "Assignment Objection"), and serve it on the Debtors, the ECF service list and the Successful Bidder and Backup Bidder.

C. **Resolution of Objections.**

1. If a Contract Counterparty fails to file an Assignment Objection by the Assignment Objection Deadline, then it shall be deemed to consent to the assignment of its Contract of Lease to the Successful Bidder or the Backup Bidder pursuant to the Final Assignment Information, and the assumption and assignment shall be authorized under the terms set forth in the Assignment Schedule.

2. If a Contract Counterparty timely files an Assignment Objection, then the Court will hear such objection at the Sale Approval Hearing. The pendency of a dispute relating to a cure amount due to a Contract Counterparty will not prevent or delay the assumption and assignment of any Contract or Lease, and the cure amount will be determined at a later date, but the Debtors may proceed with the assignment of the Contract or Lease to the Successful Bidder or the Prevailing Bidder, as the case may be; provided, however, that in the event that a dispute exists with respect to a cure amount to be paid to a Contract Counterparty whose Contract of Lease is approved for assumption and assignment, the Debtors shall (a) remit the undisputed portion of the cure amount to the applicable Contract Counterparty no later than the Closing Deadline, and (b) place into escrow an amount that would satisfy the remaining disputed portion of the cure amount in the event such Contract Counterparty prevailed in the resolution of the dispute, and shall pay such remaining cure amount to the Contract Counterparty within 7 calendar days of the effective date of a final, non-appeal order resolving the cure amount due to such Contract Counterparty.

3. If an Assignment Objection objects to the assignment of the Contract or Lease to the Successful Bidder or the Backup Bidder, and if the Court approves the Sale, but fails to overrule the objection, then the Successful Bidder or the Backup Bidder, as the case may be, shall, within 24 hours of the conclusion of the Sale Approval Hearing (the "Bid Alteration Deadline"):

15

      a.    Inform the Debtors that it is withdrawing its Bid; or

      b.    Notify the Debtors that it intends to proceed with its Bid, but at a price reduced by the amount that its Bid ascribed to such Contract or Lease (in either case, a "Bid Alteration").

4.    Within 24 hours of the Debtors' receipt of a Bid Alteration, the Debtors shall file with the Court, and serve on all Sale Notice Parties, its determination (the "Final Sale Notice") whether:

      a.    To proceed with Sale to either the Successful Bidder or the Backup Bidder (depending on the nature of the Bid Alterations); or

      b.    To decline to proceed with the Sale.