# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| IN RE | ) | Chapter 11 |
| | ) | |
| BARTLETT MANAGEMENT SERVICES, INC., *et al.*,* | ) | Case No. 17-71890 |
| | ) | |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

## REORGANIZED DEBTOR'S (I) MOTION (A) TO APPROVE NON-SUBSTANTIVE MODIFICATIONS TO THE CONFIRMED PLAN (1) ENLARGING THE TIME FOR THE FILING OF PROFESSIONAL FEE APPLICATIONS, AND (2) ENLARGING THE TIME FOR THE REORGANIZED DEBTOR TO COMMENCE CERTAIN CAUSES OF ACTION, AND (B) TO CHANGE THE CAPTION OF THE CASES TO COINCIDE WITH THE DEBTORS' CURRENT WIND-UP OPERATIONS, AND (II) REQUEST FOR HEARING, IF POSSIBLE, DURING THE WEEK OF JANUARY 20, 2020

Reorganized Debtor Bartlett Management Services, Inc. ("BMSI" or the "Reorganized Debtor"), as the substantively consolidated successor to Bartlett Management Indianapolis, Inc. ("BMII") and Bartlett Management Peoria, Inc. ("BMPI," and collectively with BMSI and BMII, the "Debtors"), in the Debtors' jointly administered Chapter 11 cases (i.e, 17-71890, 17-71892, 17-71893, respectively), under the Amended Joint Consolidated Chapter 11 Plan of Liquidation (as Corrected) dated December 3, 2019 (the "Confirmed Plan"), as confirmed by this Court's Order Confirming Amended Joint Consolidated Chapter 11 Plan of Liquidation (As Corrected), as docketed as Document Numbers 794-1, and 794, respectively, in Case No. 17-71890 (the "Confirmation Order"), respectfully moves this Court, with the Creditor Trustee's consent, as follows:

---

* The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Bartlett Management Services, Inc. (4428), Bartlett Management Indianapolis, Inc. (2750), and Bartlett Management Peoria, Inc. (1543). The mailing address of all of the Debtors is 70 Clinton Plaza, Clinton, Illinois, 61727-2170.

(a) pursuant to section 1127(b) of the Bankruptcy Code, 11 U.S.C. § 101 et seq. (the "Code" or the Bankruptcy Code"), Rule 3019 of the Federal Rules of Bankruptcy Procedure (the "Rules"), and Section XII.A of the Confirmed Plan, to approve non-substantive modifications to the Confirmed Plan (the "Proposed Modifications"),[1] with the language of the Proposed Modifications reflected in Exhibit A hereto through a redlined version of the proposed modified provisions against the language of the Confirmed Plan):

(i) enlarging the time for the filing of Professional fee applications by 15 days (from Sunday, February 2, 2020, to Monday, February 17, 2020; and

(ii) enlarging the time for the Reorganized Debtor to commence certain Causes of Action (i.e., before such Causes of Action vest in the Creditor Trustee) from 45 days to 90 days (i.e., from February 2, 2020, to

---

[1]    As discussed more fully below, the Proposed Modifications are entirely non-substantive. Taking the requests in reverse order, because the Causes of Action at issue (the proceeds of which the Reorganized Debtor may use only to pay certain claims against its Estate, and then will convey any excess to the Creditor Trust) vest in the Creditor Trust 45 days after the Effective Date only if the Reorganized Debtor has not filed them during such 45-day period.  Thus, the sole impact of this modification will be to provide the Reorganized Debtor with additional time to settle some (or all) of the Causes of Action without filing adversary proceedings, or to opt not to pursue the claims at all.  Absent this Proposed Modification, the Reorganized Debtor will defer the vesting of the Causes of Action in the Creditor Trust merely by filing proceedings asserting them within the 45-day period, and then seeking to settle (or dismissing) the proceedings after they are filed.

Likewise, as for the 15-day enlargement of time for Professionals to file fee applications, the Professionals could file their fee application by the current February 2, 2020, deadline.  The additional time, however, will enable the counsel responsible for filing them (particularly, counsel for the Reorganized Debtor, who will be filing four fee applications for Professionals retained by the Debtors), to ensure the accuracy of the applications, and to focus his attention on the matters arising during the 45 days following Effective Date as to which, even if the Court enlarges the time with respect to the Causes of Action, the Reorganized Debtor may not seek an enlargement of the deadlines by the instant non-substantive Motion.

March 18, 2020),[2] after the Confirmed Plan's December 19, 2019 Effective

Date (sometimes, the "Plan Effective Date"); and

(b) pursuant to section 105(a) of the Bankruptcy Code, providing that the

Confirmed Plan as modified by the Proposed Modifications (the "Modified Plan") shall

constitute the plan for all purposes without affecting the dates and deadlines

established by the Confirmed Plan; and

(c) pursuant to Code section 105(a) and Rule 1015(b), to change the

footnote of the caption for pleadings and papers filed in the Cases to identify the

Debtors' mailing address (i) for business-related mail, to the Debtors' accountant, RPT

Restaurant Accounting LLC ("RPT"), 2702 International Lane #201, Madison, WI 53704

Attn: Alicia Burrill, and (ii) for pleadings and legal papers, to the Debtors' undersigned

counsel, Jonathan Backman, at the address set forth in the signature block below; and

(d) if the Court's schedule so permits, to schedule a hearing on the Motion

during the week of January 20, 2020, so as to provide the Reorganized Debtor with time

to make the required filings by the current deadlines if the Motion is denied in whole or

in part.

In support of the Motion,[3] as to which, as indicated above, the Creditor

Trustee has informed the Reorganized Debtor that he supports the Proposed

Modifications, the Reorganized Debtor states as follows:

---

[2]     Because February 2, 2020, falls on a Sunday, the deadlines at issue here
would be Monday, February 3, 2020, and thus the requests at issue actually amounts to
only 14 and 44, as opposed 15 and 45 days.  Nevertheless, to avoid confusion with respect to
the Confirmed Plan's language (i.e., which refers to the current deadlines as falling 45 days
after the Effective Date), the Reorganized Debtor refers to the current deadline as falling on
February 2, 2020, the 45th day after the Plan Effective Date.

[3]     Capitalized terms utilized but not otherwise defined in this Motion have the
meanings ascribed to them in the Confirmed Plan.

## I.  JURISDICTION, VENUE AND STATUTORY PREDICATES

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, as retained by Section XI.6 of the Confirmed Plan.  Venue is proper in this district pursuant to 28 U.S.C. § 1408.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      The statutory bases for the relief requested herein are sections 105 and 1127 of the Bankruptcy Code.

## II. APPLICABLE BACKGROUND

### A.  General Case Background

3.      On December 5, 2017 (the "Petition Date"), each Debtor commenced a case under Chapter 11 of the Bankruptcy Code by filing a voluntary petition for relief in the applicable Case.

4.      On December 11, 2017, the Court entered Orders in each of the Cases that, among other things, (a) provided for the joint administration of the Cases under Case No. 17-71890, and (b) approved the caption set forth above, (c) clarified that the joint administration of the Cases would not effect a substantive consolidation of the Debtors.

5.      On January 8, 2018, the Office of the United States Trustee ("UST") appointed an official committee of unsecured creditors in each of the Cases (the "Committees").

6.      By Order entered January 22, 2019 (the "Sale Approval Order") [Doc 566], the Court authorized, among other things, the Debtors' sale (the "Sale") of substantially all of their operating assets to designees of EYM Foods II, LLC ("EYM"),

4

an unrelated third party and the successful bidder at the public auction that the

Debtors had conducted on December 20, 2018.

7.     The Sale included the Debtors' headquarters, and the designated

address of their registered agent, Joseph Adams, at 70 Clinton Plaza in Clinton, Illinois

(the "Clinton Headquarters").

8.     Under the Sale Approval Order, the Debtors were authorized to

continue to occupy a portion the Clinton Headquarters for eight weeks in order to wind

up their administrative operations there, including among other things, (a) securing

and moving the Debtors' hard and electronic files, (b) returning various leased

equipment, and (c) ensuring a smooth transition of their utilities and other accounts to

EYM.

9.     In or around the middle of March 2019, the Debtors permanently

vacated the Clinton Headquarters, and arranged for any mail that was still be delivered

there to be forwarded the home of their President, Robert Clawson.[4]

## B.     Confirmation of the Confirmed Plan

10.     On July 21, 2019, the Debtors filed, on behalf of the Debtors and

the Committees as co-plan proponents (the "Plan Proponents"), (A) the Joint

Consolidated Chapter 11 Plan of Reorganization (the "Original Plan") [Doc 701], and

(B) the Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code for the

Joint Chapter 11 Plan of Liquidation (the "Original DS") [Doc 702].

---

[4]     By this point, most of the Debtors' mail was being sent either to RPT, which
had informed the Debtors' vendors as well as most of the government authorities with
which the Debtors had relationships to direct correspondence, invoices and similar notices
directly to it, or (b) to the Debtors' counsel, who was designated as the notice recipient for
essentially all legal papers and pleadings.

11.    On September 17, 2019, the Debtors filed, again on behalf of the Plan Proponents, (a) an <u>Amended Joint  Consolidated Chapter 11 Plan of Liquidation dated September 13, 2019</u> (the "Amended Plan) [Doc 736], and (b) an <u>Amended Disclosure Statement pursuant to Section 1125 of the Bankruptcy Code for the Amended Joint Chapter 11 Plan of Liquidation dated September 13, 2019</u> (the "Amended DS") [Doc 737].

12.    On September 19, 2019, the Court entered an Order (the "Adequacy Order") [Doc 742] (a) approving the Disclosure Statement, (b) setting the hearing on confirmation of the Amended Plan (the "Confirmation Hearing") for November 5, 2019, at 10:00 a.m., (c) setting the deadline for objecting to and voting on the Amended Plan for October 30, 2019 (the "Plan Objection Deadline" and "Plan Voting Deadline," respectively), and (d) directing the Debtors to distribute to all creditors and other parties in interest, by September 27, 2019, (i) the Adequacy Order, (ii) the Amended Disclosure Statement, (iii) the Amended Plan, and (iv) appropriate ballots conforming to Official Form 314 to all creditors who have the right to vote on the Amended Plan (the "Plan Solicitation Documents").

13.    On November 4, 2019, the Debtors filed the Debtors' Motion to Confirm Amended Joint Consolidated Chapter 11 Plan of Liquidation on behalf of the Plan Proponents (the "Confirmation Motion").

14.    The Confirmation Motion set forth the reasons that the Debtors' submitted that the Amended Plan should be confirmed, subject to the certain corrections and clarifications.

15.    At the Confirmation Hearing on November 5, 2019, the Court indicated that it would confirm the Amended Plan upon the Debtors' submission of an appropriate order acceptable to the Plan Proponents and to Heartland Bank and Trust Company, the Debtors' principal pre-petition secured lender and one of their largest unsecured creditors.

16.    On December 3, 2019, the Debtors (a) filed the Confirmed Plan, redlined against the Amended Plan, and (b) submitted a proposed Confirmation Order with the Confirmed Plan attached thereto.

17.    On December 4, 2019, the Court entered the Confirmation Order.

18.    On December 19, 2019, the Confirmed Plan became effective by its terms.

## C.    Pertinent Plan Provisions

19.    Only the following handful of Confirmed Plan provisions (with emphasis added) are pertinent to the instant Motion.

a.    Section II.A (page 12): "Any person or entity (other than a Professional) that believes that it is the Holder of an Administrative Claim that (i) has not previously been Filed, and (ii) that is not barred by the Initial Administrate Claims Bar Date Order [i.e., the Order entered by the Court on April 15, 2019, as Document Number 620 in Case No. 17-71890 on April 15, 2019 requiring that all requests for allowance of Administrative Claims that arose prior to March 15, 2019, had to be filed and served by May 15, 2019, or be

permanently and forever barred, discharged and enjoined][5] shall file a request

for allowance or payment of such alleged Administrative Claim [within 30 days

of the Effective Date or such alleged Administrative Claim would be] forever

barred, estopped, and enjoined. . ."

      b.      Section II.B (page 13): "Any Professional shall file a final fee

application within 45 days of the Effective Date for such Professional's work in

the Cases through the Effective Date."

      c.      Section VI.A (page 21): "If substantive consolidation of all of

the Estates is ordered [as it was] then, on and after the Effective Date, all assets

and liabilities of the Debtors shall be treated as merged into the Estate of BMSI,

the Reorganized Debtor, for all purposes associated with Confirmation and

Consummation of the Plan."

      d.      Section VI.C (pages 22-23): "[T]he following assets shall be

retained by the [Reorganized Debtor], and <u>shall not vest in the Creditor Trust</u>, to

the <u>limited extent</u> set forth herein (the "Debtor Retained Assets"): . . . (e) any

Cause of Action,[6] including any Released Party Cause of Action [i.e. Causes of

Action against certain parties that receive releases pursuant to Sections IX.F of

the Plan as of the 45th day after the Effective Date],[7] provided, however, that any

---

[5]     *See* Confirmed Plan §I.B.65.

[6]     The definition of "Causes of Action" includes "any claim, cause of action,
chose in action, action, suit, demand, and any other debt, obligation, [etc.]." including but
not limited to avoidance actions under Chapter 5 of the Bankruptcy Code, that the Debtors
possessed prior to the Plan Effective Date.  Confirmed Plan §I.B.18.

[7]     Section I.B.84 defines "Released Parties" as "each Entity granted a release in
Article IX.F [on page 31-32] of the Plan."  Confirmed Plan at 10 (§I.B.84); *see also*

                                                     (continued...)

Cause of Action must be commenced by . . . the Reorganized Debtor . . . <u>prior to the 45th day following the Effective Date</u>, and the proceeds, if any, of any Cause of Action shall be used only for the following purposes: . . . (ii) for any Cause of Action, to pay other Allowed Administrative Claims [i.e. Allowed Administrative Claims other then the Administrative Claims of Professionals][8]. . . . For the purposes of this Section VI.C only, Administrative Claims [also] include (a) Tax Claims, and (b) the funds necessary to retain an accountant to prepare the final tax returns to be filed on behalf of the Debtors (to the extent that insufficient funds remain in the Wind Up Budget to pay for the preparation of such final tax returns)."

  e.  Section VI.D (page 23): "On and after the Effective Date <u>the Debtors will continue to exist</u> [until the Creditor Trustee determines that they

---

[7](...continued)
Confirmed Plan at 31-32 (§IX.F.1) (identifying the Released Parties and describing the scope of their releases).

[8]  The first proviso of subsection (e) of this section provides that the proceeds of Released Party Causes of Action — i.e., Causes of Action that will be released on the 45th day following the Effective Date of the Reorganized Debtor has not filed an adversary proceeding to pursue them prior to such date — may also be used to pay the Allowed Administrative Claims of certain of the Debtors' and the Committees' Professionals, subject to the limitations of Section II.B. Confirmed Plan at 23 (§ VI.C.(e)(i)). The Released Party Causes of Action, however, and thus the purposes for which the proceeds of such Causes of Action may be used, <u>are not the subject of the instant Motion</u> (because extending the period for the Reorganized Debtor to pursue such a Released Party Cause of Action arguably would constitute a substantive modification to the Plan in that it would delay the date on which certain of the Released Parties' releases become effective under the Plan and thereby adversely impact such Released Parties). A Released Party may agree to extend the 45-day period voluntarily (and in abundance of cause, albeit likely not necessary, this Motion requests authority for Released Party to do so). But the enlargement of time requested by this Motion applies only to Causes of Action other than Released Party Causes of Action.

should be dissolved],[9] but their assets will have been consolidated with those of

the Reorganized Debtor . . ."

       f.      Section VI.G (page 25): "Upon the [Plan] Effective Date, the

authority, power, and incumbency of the persons then acting as directors of the

Debtors shall be terminated and such directors shall be deemed to have resigned,

and any remaining officers and employees of the Debtors as of such date shall

automatically cease to be officers and employees of the Debtors; provided,

however, that Steven A. Nerger, the court-approved Chief Restructuring Officer

of the Debtors, shall retain such position with the Reorganized Debtor until the

earlier of (a) his resignation, (b) the filing of the Wind-Up Notice, or (c) his

termination by the Sole Director (as hereinafter defined).  From the Effective

Date through the filing of the Wind-Up Notice, Joseph T. Adams [an officer, in-

house counsel to and registered agent for the Debtors since for many years] shall

be deemed appointed as the sole director (the "Sole Director") of the Reorganized

Debtor, and (either exclusively or though his oversight of Mr. Nerger, unless and

until Mr. Nerger is terminated), shall have full corporate authority to take

actions reasonably necessary to implement the Plan."

       g.      Section XII.A (page 37): "A Holder of a Claim or Equity

Interest that has accepted this Plan shall be deemed to have accepted this Plan,

as altered, amended or modified, if the proposed alteration, amendment,

modification or remedy does not materially and adversely affect the treatment of

the Claim or Equity Interest of such Holder hereunder."

---

[9]     *See* Confirmed Plan § VI.E (page 24).

10

      h.      Finally, under sections I.B.100, II.A, II.C, and IV.A of the Confirmed Plan, the Reorganized Debtor is responsible for objecting to, and paying any allowed, Administrative Claims and Priority Tax Claims, and for paying for the preparation and filing of the Debtors' final State and federal tax returns.

## C.   <u>Certain Post-Sale Events</u>

20.     As discussed above, subsequent to the Sale to EYM on January 31, 2019, the Debtors were permitted to continue operating from the Clinton Headquarters Clinton, Illinois, for roughly eight weeks in order to complete various administrative tasks.

21.     Although Mr. Clawson participated as needed in this wind-down of the Debtors' operations at their Headquarters, Mr. Adams, as both a corporate officer and the Debtors' in-house counsel, as well as their registered agent, remained onsite during this period and took the lead (in conjunction with Mr. Nerger, RPT and Mr. Backman) in effecting the wind-down of the Debtors' businesses.

22.     In addition, even after vacating the Clinton Headquarters, Mr. Adams continued to work with RPT, Mr. Nerger and Mr. Backman in coordinating the Wind-Up Tasks (as defined in the Confirmed Plan).

23.     Accordingly, when the Plan Proponents filed the Original Plan in July 2019, Mr. Adams was (and remains) the logical choice to serve as the Sole Director for completing the Wind-Up Tasks in conjunction with RPT, Mr. Nerger (as CRO) and Mr. Backman.

24.    Upon vacating the Clinton Headquarters, Mr. Adams provided for all mail to be forwarded to Mr. Clawson at his home in DeWitt County, because (a) Mr. Clawson was still the Debtors' president, and (b) Mr. Adams was anticipating returning to his home town (Salt Lake City) once securing a job there.

25.    The Debtors, however, inadvertently omitted to change Mr. Adams's mailing address as registered agent from the Clinton Headquarters to his home in Clinton, Illinois.

26.    Still, by that point, with the Debtors having been in Chapter 11 for more nearly 18 months, essentially all business-related mail was going to RPT, with pleadings and other legal papers generally being served on Mr. Backman; and when Mr. Clawson received mail that had been forwarded from the Clinton Headquarters address, he forwarded it to RPT, to Mr. Backman, or both, depending upon its contents.

27.    Shortly after the filing of the Original Plan, Mr. Adams secured a job with the Utah Attorney General's office in Salt Lake City, Utah, and thus is no longer eligible to serve as the Debtors' registered agent.

28.    As a result, the Debtors will be changing their registered agent to Mr. Backman at his Bloomington office.

## REQUESTS FOR RELIEF

### I.    The Proposed Modifications.

29.    Section 1129(b) of the Bankruptcy Code permits a debtor or a reorganized debtor to seek the modification of a confirmed plan so long as the plan has not been substantially consummated.[10]

30.    Furthermore, as set forth above, Section XIII.A of Plan provides that the Court may allow a post-confirmation modification to the Plan without re-solicitation of acceptances or rejections of the Plan so long as "the proposed . . . modification . . . does not materially and adversely affect the treatment of [any creditor or equity interest holder]."

31.    Here the Confirmed Plan obviously has not been substantially consummated.

32.    This so because the very first of the three requirements for substantial consummation of the Plan is the "transfer of all or substantially all of the property proposed by the plan to be transferred."  11 U.S.C. § 1101(2)(a).

33.    Here, besides the Unsecured Creditor Carve-Out (which itself has not yet been transferred from the Reorganized Debtor to the Creditor Trust, but may be

---

[10]    Section 1127 provides that only the plan proponent (or proponents) may modify a plan prior to confirmation, but that the plan proponents or the reorganized debtor may modify the plan after confirmation.  Compare 11 U.S.C. §1127(a) to §1127(b).  Here, although the Creditor Trustee has informed the Reorganized Debtor that he has no objection to the Plan Modifications, the Plan Proponents consisted of the Debtors and the Committees (not the Creditor Trustee, who was not appointed until the Effective Date).  And under the Confirmed Plan's terms, whereas the Debtors continued to exist even after the Effective Date (and thus could have filed the Plan Modifications as plan proponents), the Committees were dissolved upon the Effective Date.  See Plan at 21 §VI.A; Plan at 33 §X.D.  Thus, despite the Creditor Trustee's support of the Plan Modifications, the Reorganized Debtor alone has standing to bring this Motion.

by the time this Motion is heard), the Reorganized Debtor has not yet transferred <u>any</u> property to the Creditor Trust (including, of course, and most significantly, the Causes of Action).

34.     Nor, as discussed below, will the Proposed Modifications have a materially adverse — or any adverse — affect on creditors or equity holders.

35.     Quite the contrary, the Proposed Modifications will allow for a more orderly, and in many case less expensive, resolution of the matters for which the Proposed Modifications are requested.

### A.     The Proposed Modification of Section II.B Enlarging the Time for the Filing of Professional Fee Applications from 45 to 60 Days <u>After the Plan Effective Date.</u>

36.     As set forth above, Section II.B of the Plan requires that final fee applications are due 45 days after the Effective Date, i.e., February 2, 2020.

37.     As forth in Exhibit A, the Proposed Modification would enlarge this time for a mere 15 days, to February 17, 2020.

38.     To save the cost to the Debtors' Professionals (other than Mr. Backman himself) of retaining counsel to prepare and file fee applications (the reasonable costs of which the Professionals could include as part of their fee applications), the Reorganized Debtor — and in, particular, its counsel, Jonathan Backman — will be filing four final fee applications: (a) for himself; (b) for the Chief Operating Officer, Steven Nerger; (c) for RPT, as the Debtors' accountants during the pendency of the large portion of the Cases; and (d) for Michael Smith, Debtors' tax accountant.

14

39.    Mr. Backman has been working diligently with the Professionals to prepare all of their Fee Application by February 2 (really, February 3, since as indicated above, February 2 is a Sunday).

40.    Without the Proposed Modification enlarging the time for the filing of these fee Applications, the Reorganized Debtor would file the Fee Applications by the current deadline.

41.    Yet, in view of all of the Reorganized Debtor's (against, largely Mr. Backman's) post-Effective Date obligations and deadlines, the finalization of these Fee Applications is presenting an extraordinary burden on Mr. Backman, and his expenditure of time finalizing the Fee Applications during the 45-day period will prevent him from giving full attention to the other, even more important, tasks that the Reorganized Debtor must address during this time period.

42.    Moreover, enlarging the deadlines for the filing of the Fee Applications can have no adverse effect on any party in interest because (a) as noted above, if necessary Mr. Backman will file the Fee Applications during the 45-day period, and (b) in any event, the mere filing of a Fee Application does not determine the date on which the Court may schedule a hearing on, or rule on a Fee Application.

43.    Accordingly, the Reorganized Debtor submits that this requested Proposed Modification may be granted without the need for the Court to provide time for creditors to changed their acceptances of the Confirmed Plan. *See* Confirmed Plan, *supra*, at 37 §XII.A; *In re Boroff*, 189 B.R. 53, 57 (D.Vt. 1995) ("[Rule 3019] makes clear that a modification may be made after acceptance of the plan without submission to

creditors . . . if their interests are not affected) (citing Fed. R. Bankr. P. 3019, Advisory

Committee's Note (1983)).

**B.    The Proposed Modification of Section VI.C to Enlarge the Debtor's Time to File Causes of Action (Other than Released Party Causes of Action) From 45 to 90 Days after the Plan Effective Date.**

44.    As set forth above, as with the deadline to filing Fee Applications,

the Section VI.C.(e) of the Confirmed Plan provides that any Causes of Action (other

than Released Party Causes of Action) will vest in the Creditor Trust if the Reorganized

Debtor has not commenced an action asserting such a Cause of Action by the 45th day

after the Effective Date (i.e., again, February 2, or February 3, 2020).

45.    As requested herein, and set forth in Exhibit A, the Proposed

Modification would enlarge this deadline to the 90th day after the Effective Date (i.e.,

March 18, 2020).

46.    Again, this Proposed Modification would have no materially

adverse — nor any adverse — affect on creditors or equity holders.

47.    Quite the contrary, the Proposed Modification will allow for a more

orderly, and less expensive, transfer of the Causes of Action to the Creditor Trust.

48.    Under the Confirmed Plan, the Reorganized Debtor is responsible

for objecting to, and then (to the extent allowed) paying, certain Claims — specifically,

Administrative Claims and Tax Claims — and also paying for various Wind-Up Tasks

(whereas the Creditor Trust is responsible for objecting to, and making distributions to,

other creditors).

49.    In connection with the assessment of the Confirmed Plan's

feasibility, the Reorganized Debtor undertook a review of the Claims for which it is

responsible, and made a preliminary determination as to the likely amount of Allowed

Priority Tax Claims and Administrative Claims, but it will not know the final amount

owing on those Claims until it has completed the claims objection process.

50.     What's more, the Reorganized Debtors cannot even begin to

determine the final anticipated amount of Allowed Administrative Claims until 30 days

after the Effective Date (January 18, 2020) — i.e., the deadline for holders of alleged

Administrative Claims not barred by the Initial Bar Date Order to file requests for the

allowance their Administrative Claims.

51.     Thus, for this and certain related releases, to provide the

Reorganized Debtor with time to determine the Causes of Action that it would pursue

after the Final Administrative Bar Date expires, the Confirmed Plan provides that most

Causes of Action against third parties that ultimately will vest in the Creditor Trust

will not do so if the Reorganized Debtor commences proceedings asserting such Causes

of Action within 45 days of the Effective Date, provided that the Reorganized Debtor

may use the proceeds of any such Causes of Action solely to pay (or where applicable, to

reimburse the payment of) the following: (a) Allowed non-Professional Claims;

(b) Allowed Priority Tax Claims; and (c) the payment for the Debtors' final tax returns.[11]

52.     The problems that have emerged in connection with the 45-day

period for filing proceedings asserting Causes of Action (before such Causes of Action

vest in the Creditor Trust) are (a) that as a result of the Debtors' multitude of

obligations in connection with the confirmation of the Confirmed Plan, the Reorganized

---

[11]     As indicated above, an exception exists for the proceeds of Released Party
Causes of Action, which also may be used to pay Allowed Administrative Claims of
Professionals, but subject to the limitations on the payment of such Claims under Section
II.B of the Confirmed Plan.

Debtor has not yet had been able to file Claims objections with respect to the filed Administrative Claims and Priority Tax Claims that the Reorganized Debtor anticipates will be disallowed, and (b) the truncated period between the Final Administrative Claims Bar Date and the end of the 45-day deferred vesting provision provides the Reorganized Debtor with very little time to determine the Causes of Action that the Reorganized Debtor may be able to settle, or to forego pursuing at all through formal adversary proceedings.

53.   Thus, without an enlargement of the 45-day deferred vesting period, the Reorganized Debtor will be forced to file (and pay the filing fees and legal expenses for) adversary proceedings asserting all of the Causes of Action, and then seek to settle, or dismiss, the proceedings after the Reorganized Debtor has commenced them (thereby deferred the vesting of the Causes of Action in the Creditor Trust), when the Reorganized Debtor potentially could avoid filing the proceedings at all if the Court modified the Confirmed Plan to enlarge the 45-day deferred vesting period to 90 days (i.e., from February 2, 2020, to March 18, 2020).[12]

54.   Not only is this Proposed Modification wholly non-substantive (because, as indicated above, the Reorganized Debtor can and will defer the vesting of the Causes of Action merely by filing adversary proceedings asserting the Causes of Action), but it will conserve fees and expenses that will then be available for distribution to, at a minimum, Professionals and the Bank.

---

[12]   The passage of section 546(a)'s 2-year limitations period for avoidance actions is not an issue here because (a) some of the Causes of Action are not avoidance actions under section 546, and (b) the Debtors (with the assistance of the Creditor Trustee's attorneys) have obtained tolling agreements from all potential avoidance action defendants extending the limitations period for three months to a year past the statutory deadline.

55.    Moreover, the Confirmed Plan fully protects the beneficiaries of the
Creditor Trust by (a) authorizing the Creditor Trustee to intervene in any adversary
proceeding asserting a Cause of Action, (b) requiring the Reorganized Debtor to transfer
to the Creditor Trust any funds it recovers from the pursuit of a Cause of Action in
excess of the amount for which the Reorganized Debtor is authorized to use such
proceeds. *See* Plan at 23 § VI.C.

56.    What's more, the enlargement of the period for the Reorganized
Debtor to pursue the Causes of Action will avoid the risk that the Reorganized Debtor
might opt not to file a proceeding asserting a Cause of Action — because the
Reorganized Debtor determines that a particular Cause of Action will not be needed to
cover the anticipated Allowed Claims and tax returns for which the Reorganized Debtor
is responsible — but later discover that it miscalculated the total amount that it will
owe, which (a) would require the Reorganized Debtor to seek the re-vesting of a Cause
of Action in the Reorganized Debtor or, (b) worse, cause the Reorganized Debtor to
possess insufficient funds to make its required Plan payments.

57.    Finally, and significantly, although the requested modification
would enlarge by 45 days the Reorganized Debtor's <u>required</u> period for causing a
deferral of the vesting of the Causes of Action in the Creditor Trust, the Reorganized
Debtor can, and will, agree to the vesting of some or all Causes of Action to the Creditor
Trust prior to the expiration of such 90-day period as soon as it determines that the
Reorganized Debtor does not have a basis for retaining the proceeds of a Cause of
Action.

58.     Accordingly, this Proposed Modification will allow for a more orderly process for objections to claims, and the commencement of adversary proceedings, while furthering, and protecting, the interests of the Debtors, the Reorganized Debtor and their various creditor constituencies.

59.     Additionally, because the Proposed Modification will not adversely affect any voting party in interest, the Court may approve the modifications without establishing a date for voting creditors to change their acceptances or rejections of the Confirmation Plan. Again, *see* Confirmed Plan, *supra*, at 37 §XII.A; *In re Boroff*, *supra*, 189 B.R. at 57 ("[Rule 3019] makes clear that a modification may be made after acceptance of the plan without submission to creditors . . . if their interests are not affected) (citing Fed. R. Bankr. P. 3019, Advisory Committee's Note (1983)).

## II.   Change in Case Caption

60.     As set forth above, the caption that the Court approved for these three jointly administered cases includes as a footnote that provides as follows:

> "The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Bartlett Management Services, Inc. (4428), Bartlett Management Indianapolis, Inc. (2750), and Bartlett Management Peoria, Inc. (1543). The mailing address of all of the Debtors is 70 Clinton Plaza, Clinton, Illinois, 61727-2170."

61.     As also discussed above, the Debtors no longer are located at 70 Clinton Plaza, Clinton, Illinois, 61727-2170.

62.     With (a) RPT handling substantially all of the Debtors' non-legal mail, (b) Mr. Backman, as the Debtors' and Reorganized Debtor's bankruptcy counsel already receiving substantially all legal mail, and soon to be identified as the registered agent, the Debtors propose changing the footnote of the caption to the following:

"The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Bartlett Management Services, Inc. (4428), Bartlett Management Indianapolis, Inc. (2750), and Bartlett Management Peoria, Inc. (1543).  The mailing address for business-related mail is RPT Restaurant Accounting LLC ("RPT"), 2702 International Lane #201, Madison, WI 53704 Attn: Alicia Burrill, and for legal papers and documents is Jonathan Backman, 117 North Center Street, Bloomington, Illinois, 61701."

## III.   Request for Hearing Date

63.     Finally, the Reorganized Debtor respectfully asks that, if the Court's hearing schedule so allows, then the Court schedule the hearing on the Motion (whether in person or telephonic) on the soonest date possible during the week of Monday, January 20, 2020, so that the Reorganized Debtor knows as soon as practicable prior to the February 2, 2020, deadlines under the Confirmed Plan whether it will have the additional time requested herein to file the pleadings currently due on February 2 (or February 3), 2020.

## CONCLUSION

WHEREFORE, the Reorganized Debtor prays that this Court enter an Order (i) approving the Proposed Modifications' enlargement of (a) the deadline for the filing of Professional Fee Applications for 15 days (from February 2, 2020, to February 17, 2020, (b) the deadline for Reorganized Debtor to commence proceedings asserting certain Causes of Action from 45 days to 90 days (i.e. all Causes of Action other than the Released Party Causes of Action) after the Plan Effective Date (i.e., from February 2, 2020, to March 18, 2020); (ii) as set forth in the Proposed Modifications, authorizing, but not requiring, a Released Party to agree to an enlargement of the deadline by which the Reorganized Debtor may commence a Released Party Causes of Action against such

21

Released Party, (iii) providing that the Confirmed Plan as modified by the Proposed

Modifications shall constitute the confirmed plan for all purposes without affecting the

dates and deadlines established by the Confirmed Plan, (iv) approving the change in the

footnote of the caption for pleadings and papers filed in the Cases to identify the

Debtors' mailing address (a) for business-related mail, to the Debtors' accountant, RPT

Restaurant Accounting LLC ("RPT"), 2702 International Lane #201, Madison, WI 53704

Attn: Alicia Burrill, and (b) for pleadings and legal papers to the Debtors' undersigned

counsel, Jonathan Backman, at the address set forth in the signature block below,

(v) scheduling the hearing on the Motion for the earliest date consistent with the

Court's schedule during the week of January 20, 2020, and (vi) granting the Debtors

and the Reorganized Debtor such other and further relief as the Court deems just and

proper.

Dated: January 6, 2020

Respectfully submitted,

By:  /s/ Jonathan A. Backman

Jonathan A. Backman
Law Office of Jonathan A. Backman
117 N. Center Street
Bloomington, Illinois 61701-5001
(309) 820-7420
FAX:  (309) 820-7430
jbackman@backlawoffice.com

*Counsel for Debtor and Reorganized Debtor*
*Bartlett Management Services, Inc.;*
*Debtor Bartlett Management Peoria, Inc.; and*
*Debtor Bartlett Management Indianapolis, Inc.*

## CERTIFICATE OF SERVICE

I, Jonathan A. Backman, an Illinois attorney, hereby certify that on January 6, 2020, I electronically filed the foregoing **Reorganized Debtor's (I) Motion (A) to Approve Non-Substantive Modifications to the Confirmed Plan (1) Enlarging the Time for the Filing of Professional Fee Applications, and (2) Enlarging the Time for the Reorganized Debtor to Commence Certain Causes of Action, and (B) to Change the Caption of the Cases to Coincide with the Debtors' Current Wind-Up Operations, and (II) Request for Hearing, If Possible, During the Week of January 20, 2020,** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Sumner Bourne on behalf of Creditor Hermes Service & Sales Inc.
sbnotice@mtco.com, SABArchive@gmail.com

Michael P. O'Neil on behalf of Creditor Berkshire Hathaway Homestate Ins. Co.
moneil@taftlaw.com, aolave@taftlaw.com

Erika Barnes on behalf of Creditor KFC Corporation
ebarnes@stites.com, mdennis@stites.com;docketclerk@stites.com

Mark A Bogdanowicz on behalf of Creditor Heartland Bank and Trust Company
mbogdanowicz@howardandhoward.com, pkinsman@howardandhoward.com

Edward Q Costa on behalf of Creditor Eichenauer Services, Inc.
costa@smsjslaw.com

James T Finegan on behalf of Interested Party Robert Clawson
jasfin@aol.com, fineganbankruptcylaw@yahoo.com; rfinegan@gmail.com

Craig Solomon Ganz on behalf of Creditor SCF-HW-G, LLC
ganzc@ballardspahr.com, PHXDocketingbkr@ballardspahr.com;
hartt@ballardspahr.com

Harold Hirshman on behalf of Creditor Kmart Stores of Illinois LLC
Harold.hirshman@dentons.com

David Anthony Izzo on behalf of Creditor Eichenauer Services, Inc.
david.izzo@selective.com, stuart.rappaport@selective.com; lucia.vojacek@selective.com

Brian David Jones on behalf of Creditor KFC Corporation
bdjones@sorlinglaw.com

Cari Kauffman on behalf of Creditor American Honda Finance Corporation
ckauffman@sormanfrankel.com, dfrankel@sormanfrankel.com

Kathryn A. Klein on behalf of Creditor Ally Bank and Ally Financial Inc.
rb_bank@riezmanberger.com, riezmanberger@gmail.com
David P. Lloyd on behalf of Interested Party EYM Foods II, LLC
dlloyd@davidlloydlaw.com, courtdocs@davidlloydlaw.com

Mark A. Ludolph on behalf of Creditor Ja-Bo, Inc.
mludolph@heylroyster.com, tphelps@heylroyster.com; peoctdocket@heylroyster.com

Matthew McClintock on behalf of Creditor Committee Official Committee of Unsecured
Creditors
mattm@goldmclaw.com, teresag@restructuringshop.com;moniqueh@goldmclaw.com

Michael S. Myers on behalf of Creditor SCF-HW-G, LLC
myersms@ballardspahr.com, hartt@ballardspahr.com;
PHXDocketingbkr@ballardspahr.com

Lisa M Peters on behalf of Creditor ARC CAFEUSA001, LLC
lisa.peters@kutakrock.com

Jeffrey D. Richardson on behalf of Creditor V5 Enterprises LLC Series B
jdrdec@aol.com

Jeffrey D. Richardson on behalf of JT Restaurant Group
jdrdec@aol.com Jennifer M. Rinn on behalf of Creditor BMW Bank of North America
Jenniferr@kropik.net, Jennifer@rinnrichmanlaw.com

Jennifer M. Rinn on behalf of Creditor BMW Financial Services NA, LLC, c/o AIS
Portfolio Services, LP
Jenniferr@kropik.net, Jennifer@rinnrichmanlaw.com

Timothy E. Ruppel on behalf of U.S. Trustee U.S. Trustee
tim.ruppel@usdoj.gov, timmy.ruppel@gmail.com

Mark D. Skaggs on behalf of U.S. Trustee U.S. Trustee
Mark.D.Skaggs@usdoj.gov

Howard Marc Spector on behalf of Creditor Micromont Holdings 4, LLC
hspector@spectorjohnson.com

U.S. Trustee
USTPRegion10.PE.ECF@usdoj.gov

David L. Wentworth, II on behalf of Creditor Lynn Moses Plumbing, Inc.
dwentworth@hwgsb.com


   /s/ Jonathan A. Backman